CLARA L. BYRNE, Appellee, v. M. L. BYRNE, Appellant.

MARRIAGE:  Annulment—Evidence—Sufficiency.  Evidence reviewed, and held insufficient upon which to base a decree of annulment of marriage.

*Appeal from Wapello District Court.*—F. M. HUNTER, Judge.

DECEMBER 11, 1917.

ACTION by wife against husband for separate maintenance and support. Decree as prayed, and defendant appeals.—*Affirmed.*

*Gilmore & Moon* and *John W. Lewis,* for appellant.

*Tisdale & Heindel* and *Work & Work,* for appellee.

WEAVER, J.—The plaintiff alleges, in substance, that defendant, having first seduced her, married her to escape criminal prosecution for the offense, but thenceforth failed and refused and still refuses to live with her or to provide for the care or support of herself or of the child which she bore him. She therefore prays that defendant be adjudged to pay her a monthly allowance of $60 for the support of herself and child, and for temporary alimony and counsel fees.

In answer, defendant admits his marriage with plaintiff, but denies any liability for her support, and, by way of further answer and cross-petition, alleges that his consent to said marriage was obtained by plaintiff through fraud and false representations, as follows: That plaintiff falsely and fraudulently represented to him that she was pregnant, and thereafter falsely and fraudulently represented to him that she had given birth to a baby girl; but he alleges that in truth and in fact plaintiff was not pregnant, and that she did not in fact give birth to the child produced and claimed by her; but defendant, believing and relying upon the truth of her statements, and that possibly he was the father of the child which he was so led to believe was born to her, entered into said marriage, but would not have done so had he known the truth. He further alleges that, a few days prior to the marriage, plaintiff filed an information before a magistrate of Wapello County, charging him with the crime of seduction, and caused a warrant for his arrest to be issued and placed in the hands of the sheriff, which fact, with threat of his arrest, was made known to him; that, at his request, the sheriff temporarily suspended service of the writ, but such arrest would have been made, had not defendant agreed to marry the plaintiff. He further

says that, under these circumstances, and by reason of the false representations made to him by the plaintiff, and by reason of his fear of the threatened arrest and imprisonment, he gave his consent to the marriage, which was performed by the magistrate who issued the warrant. He further says that the charge of crime made against him was false and malicious, and made only for the purpose of forcing him into such marriage, and that such consent was obtained from him by fraud and duress. Defendant therefore asks, by way of affirmative relief, that his marriage to plaintiff be annulled and held to be of no validity, and that the child produced by the plaintiff as her own be adjudged not to be the child of plaintiff and himself, or of either of them.

Upon trial of these issues to the court, a decree was entered denying the prayer of the defendant's cross-petition to annul the marriage, and sustaining plaintiff's prayer for relief substantially as prayed. The defendant appeals.

At the outset of their argument in this court, appellant's counsel say:

"The appellant will concede that the appellee is entitled to the relief granted by the district court, unless this court finds that she (appellee) did not in fact give birth to the baby which she calls 'Martha Louise,' and which she produced in court as a baby born to her at Denver, Colorado, on August 1, 1913. For the purposes of this case, it will be conceded that, if appellee did in fact give birth to the baby, then appellant may be considered the father of the child. But appellant contends that Martha Louise was a waif, adopted or taken by appellee to induce appellant to marry her."

This concession relieves the court of the necessity of looking into any matter of disputed fact except such as may have a legitimate bearing upon the identification of the young child as the daughter of the plaintiff; and the burden

of disproving the alleged relationship of mother and child is necessarily upon the defendant.

The volume of testimony is entirely too great to attempt anything like an adequate statement of it within the reasonable limits of an opinion, and, indeed, the embodiment of such a statement herein would be without value as a precedent. Purely fact cases depend each upon its own peculiar circumstances and upon the ever variable degree of credence to be given the individual witnesses, with the result that its decision furnishes no rule which can safely be followed in another case between other parties, involving other circumstances, disclosed by other witnesses. A few things in explanation of the general situation may be stated. It is the theory of the plaintiff's case that, in the summer of 1913, while living in Wapello County, she was in an advanced state of pregnancy as a result of her association with defendant; that she kept this condition concealed from her friends except as she disclosed it to the defendant and to her physician and possibly to one or two other persons; that, at the advice and direction of defendant, and with money furnished by him, she went to Denver, Colorado, about July 18, 1913, where, in the course of two weeks, she was delivered of a girl child, known in the record as Martha Louise Byrne; that she notified defendant of the birth of the child; that he visited her in Denver in September, 1913, and saw the child in her possession. Later, she returned to Ottumwa and insisted on defendant's marrying her, and, after postponing the matter until a criminal prosecution was threatened or instituted, he married her. Except as relates to the pregnancy of plaintiff and birth of the child, the details above recited of plaintiff's claim are not denied. She testifies that she never had intercourse with any man other than defendant, and that, prior to her visit to Denver, she had never given birth to a child. The physician who examined her before she went to Denver

swears that, in his judgment, she was then pregnant. An-other physician who examined her about the time of the trial below swears that he found positive indication that she had at some time given birth to a child. Except an alleged admission, on which little reliance is placed in argument, no evidence was offered on the part of the defense tending to show that plaintiff had indulged in intercourse with any man other than defendant, or that she had ever given birth to a child before going to Denver. Defendant concedes that he had been unduly intimate with plaintiff for more than a year before she left Ottumwa; that plaintiff told him of her alleged pregnancy; that he believed it, and advised her to go where the child could be born, and then given away or placed in some Home; and that he believed her statement that the child Louise had been begotten by him, and so believing, he says:

"I married Clara because I thought it the only right thing to do,—to give the baby a name. I told her I didn't love her, and was marrying her only to legitimatize the baby."

The defense seeks to meet this case with evidence that plaintiff's story, written to defendant from Denver, of the circumstances attending the alleged birth of her child, and many of her statements made to others concerning it, were untrue, and this she admitted on the trial below, and it is conceded in argument by her counsel. So far as her statements to others than defendant are concerned, she explains her prevarication by saying, in substance, that she left home to hide her shame, and that, when the child was born, she fabricated the story that it was a waif she had adopted from a maternity home, and that many of her false statements were framed to carry out that theory. Defendant also says that it was his purpose to enable her to deceive her folks about having had a baby, and that he was interested in keeping it a secret. Concerning her untrue statements

to the defendant himself as to the place in Denver where she gave birth to a child, the attendance of a physician and her own subsequent condition, her explanation is not so satisfactory; though, if we accept the theory that the child is hers, she may have thought that if she gave the defendant a fanciful picture of her suffering and embarrassments and of the circumstances attending her confinement, his compassion for her and his interest in the child might be more efficiently aroused, and might lead him to marry her, and thus relieve her from a distressing situation. On the witness stand, she makes the claim that, on August 1, 1913, she entered a maternity house kept by one Mrs. Davey, and on the same day was delivered of the child, through the assistance of Mrs. Davey acting as midwife. This person, testifying by deposition in behalf of defendant, denies that plaintiff gave birth to a child there, but says that plaintiff did take and propose to adopt a child recently born to another woman; and if this witness is to be believed, plaintiff is not the mother of Martha Louise. But the character and veracity of Mrs. Davey are so thoroughly impeached by her own statements and admissions, and by the admitted fact that she gave to plaintiff a written certificate over her own name in support of plaintiff's claim that the child was born to her as she now testifies, that we do not feel justified in holding that it establishes the fact on which counsel plant their sole defense. It is true that there is other testimony tending to corroborate Mrs. Davey, but such testimony, if true, does not make plaintiff's story of the birth of the child impossible; and, while plaintiff has weakened her own claim to credibility by admitted misstatements, and while there is an air of improbability about some of the details of her story, the essential features of her claim to be the child's mother are sufficiently strengthened by the circumstances preceding and attending her trip to Denver, and by defendant's own story with relation thereto, and we

are disposed to hold that the charge of fraud alleged to have been perpetrated upon defendant has not been sustained by sufficient proof, and that the finding and decree of the trial court must stand.

We have not considered, and express no opinion upon the question, whether, under the circumstances of this case, deception practiced upon defendant as to the birth of the child would, if proved, justify or require an annulment of the marriage, or constitute a defense to the plaintiff's action.

Our conclusion that the alleged fraud has not been established, disposes of the only question urged by appellant in this court, and the decree of the district court is therefore—*Affirmed.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.